**Mark Bradford (MB 6002)**
**MARK BRADFORD, PC**
**299 12th Street**
**Brooklyn, New York 11215-4903**
**Telephone: (347) 413-3287**
**mb@markbradfordpc.com**

**Cara R. Burns (CB 1071) (PHV to be requested)**
**HICKS, MIMS, KAPLAN & BURNS**
**2800 28th Street, Ste 383**
**Santa Monica, California 90405**
**Telephone: (310) 314-1721**
**Facsimile: (310) 314-1725**
**cburns@hmkblawyers.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x

| | |
|---|---|
| **MERCH TRAFFIC, LLC,** | **CIVIL ACTION NO.** |
| **Plaintiff,** | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| **v.** | **IN SUPPORT OF EX PARTE APPLICATION FOR: A** |
| **JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY,** | **TEMPORARY RESTRAINING ORDER; SEIZURE ORDER; AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION AND SEIZURE** |
| **Defendants.** | **ORDER SHOULD NOT ISSUE** |

————————————————————————x

## <u>TABLE OF CONTENTS</u>

I .     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    DEFENDANTS SHOULD BE ENJOINED FROM SELLING,
        DISTRIBUTING, AND MANUFACTURING INFRINGING
        MERCHANDISE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.   Defendants Have Violated Section 1125(a) and Serious Questions
             Are Raised. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        B.   Defendants Have Violated Section 1114 and Serious Questions
             Are Raised. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.   Plaintiff Will Suffer Irreparable Injury . . . . . . . . . . . . . . . . . . . . . . . . . .7

        D.   The Threatened Injury to Plaintiff Outweighs Potential Harm
             to Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

IV.     PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF
        A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER . . . 8

        A.   An Injunction and Seizure Order Are Necessary To Combat
             Defendants' Activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 8

        B.   Rule 65 of The Federal Rules Of Civil Procedure And the
             Lanham Act Provide Authority For The Ex Parte Relief
             Plaintiff Seeks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.   It Is Appropriate To Issue A Temporary Restraining And
             Search Order To Enjoin Activities Of Persons Whose Identities
             Are Presently Unknown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     V.   A MULTI DISTRICT INJUNCTION AND SEIZURE ORDER
          IS BOTH NECESSARY AND PROPER . . . .. . . . . . . . . . . . . . . . . . . 13

          A.   Courts Have Issued Nationwide Injunctions and Seizure Orders. . . . . 13

          B.   The Court Will Have Jurisdiction Over The Defendants and
               Those Acting In Concert With Them . . . . . . . . . . . . . . . . . . . . . . . . . 15

**C.  The Order Binds Those Who Participate In the Defendants'
Unlawful Conduct.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

**D.  Defendants Have A Full And Fair Opportunity To Be Heard** . . . . . **17**

**VI.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

# TABLE OF AUTHORITIES

## CASES

**AMF, Inc. v. Sleekcraft Boats,**
599 F.2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Babbitt v. United Farm Workers National Union,**
442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**Benson v. Paul Winley Record Sales Corp.,**
452 F. Supp. 516 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics,**
403 U.S. 388, 91 S.Ct. 1999 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Brockum Co. v. Blaylock,**
729 F.Supp. 438 (E.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Boston Athletic  v. Sullivan,**
867 F.2d 22 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

**Corning Glass Works v. Jeannette Glass Co.,**
308 F. Supp. 1321 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970) . . . . . . . . . . . . . . 8

**eBay Inc. v. MercExchange, LLC,**
547 U.S. 388 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Express Corp. v. Federal Espresso, Inc.,**
201 F. 3d 168 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Golden Door, Inc. v. Odisho,**
437 F.Supp. 956, 968 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Hard Rock Cafe Licensing v. Pacific Graphics,**
776 F. Supp. 1454 (W.D. Wash. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Hasbro Inc. v. Lanard Toys, Ltd,**
858 F.2d 70 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Joel  v. Does,**
499 F. Supp. 791 (E.D. Wisc. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 & 12

**John Hancock Mutual Life Ins. Co. v. Central National Bank in Chicago,**
555 F. Supp. 1026 (N.D. Ill. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 & 15

<u>Malletier v. Burlington Coat Factory Warehouse Corp.</u>,
426 F.3d 532 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

<u>McGraw  Edison Co. v. Performed Line Products</u>,
362 F.2d 339 (9th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Moon Records v. Does</u>,
217 U.S.P.Q. 39 (N.D. Ill. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>New West Corp. v. NYM Co. of California, Inc.</u>,
595 F.2d 1194 (9th Cir. 1979)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 & 7

<u>Nice Man Merchandising, Inc. v. Logocroft, Ltd.</u>,
23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4 & 6

<u>Nintendo of America v. NTDEC</u>,
822 F. Supp. 1462 (D. Ariz. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Plant v. Does</u>,
19 F. Supp.2d 1316 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

<u>Polaroid Corp. v. Polarad Electronics Corp.</u>,
287 F.2d 492 (2d Cir. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

<u>R.H. Donnelley Corp. v. Illinois Bell Telephone</u>,
595 F. Supp.1202 (N.D. Ill. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>SKS Merch, LLC v. Barry</u>,
233 F. Supp. 2d 841 (E.D. Ky 2002) . . . . . . . . . . . . . . . . . . . . . . . . .4, 6, 7, 11, 14  & 15

<u>The Five Platters, Inc. v. Purdie</u>,
419 F. Supp. 372 (D. Md. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Universal City Studios, v. Kamma Industries</u>,
217 U.S.D.Q. 1162 (S.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

<u>Vuitton et Fils, S.A.</u>,
606 F.2d 1 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9 & 11

<u>Vuitton, Et Fils, S.A. v. Carousel Handbags</u>,
362 F.2d 339 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

<u>Waffenschmidt v. Mackay</u>,
763 F. 2d 711 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Winterland Concessions Co. v. Sileo,**
528 F.Supp. 1201 (N.D. Ill. 1981) *mod. other grounds*,
735 F.2d 257 (7th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

**World Wrestling v. Unidentified Parties,**
**770 F.3d 1143 (5th Cir 2014)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **45**

**STATUTES**

**15 U.S.C. §1114** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 7**

**15 U.S.C. §1116** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8, 9. 13, 15, 16**

**15 U.S.C. §1125** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 4, 7**

**15 U.S.C. §1127** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4**

**28 U.S.C. §1651** . . . . . . .. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1,  10**

**Fed. R. Civ. P. Rule 4(j)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12, 15**

**Fed. R. Civ. P. Rule 65** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 8, 9, 10, 11, 13, 16**

## I.    **INTRODUCTION.**

Plaintiff Merch Traffic, LLC ("Plaintiff") submits this Memorandum of Law in support of its Ex Parte Application for: a Temporary Restraining Order; a Seizure Order; and an Order to Show Cause Regarding Why a Preliminary Injunction and Seizure Order Should Not Issue (the "Order"). Plaintiff seeks this Order to stop the sale at concerts of infringing merchandise, and to seize the same here at the concerts to be held on October 16, October 30 and October 31, 2021 at Madison Square Garden in New York, New York, as well as nationwide, which bears the federally registered trademark, service marks, likenesses, logos and/or other indicia of the popular performer known as "HARRY STYLES" similar to ones granted in this and other Districts to this artist and to other performers.[1] The artist's tour has just begun and so have the activities of Defendant Bootleggers. As set forth below, such relief is warranted under the Lanham Act., Fed. R. Civ. P. Rule 65, and the All Writs Act.

## II.    **STATEMENT OF FACTS.**

On October 16, October 30 and October 31, 2021 at Madison Square Garden in New York, New York, the popular performer "HARRY STYLES" (the "Artist") will perform. The Artist has obtained United States Federal Trademark Registrations for his "HARRY STYLES" trademark.[2]

---

[1] From this District for the Artist's former group ONE DIRECTION: <u>F.E.A., Inc. v. Does</u>, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One Directions' tour). For this Artist and his former group from other Districts including: <u>Live Nation v. Does</u>, Case No. 3:17-cv-1275 (M.D. TN 2017) (Judge Trauger) (for Harry Styles' tour); and <u>F.E.A. Inc. v. Does</u>, Case No. 15-cv- 1438 CAB (S.D. CA 2015) (Judge Bencivengo) (for One Direction's tour). From this District for other performers: <u>Live Nation v. Does</u>, Case No. 18-cv-7551 LAP (S.D. NY 2018) (Judge Preska) (for Drake's tour); <u>Live Nation v. Does</u>, Case No. 16-cv-0336 LAK (S.D. NY 2016) (Judge Kaplan) (for Bruce Springsteen's tour); and <u>F.E.A., Inc. v. Does</u>, Case No 12-CV-1313 PGG (S.D. NY 2012) (Judge Gardephe) (for Van Halen's tour), among others. See Certificate of Counsel of Cara Burns, ¶ 6, Exhs A-B.

[2] The Artist has obtained a US Federal Trademark registration for his **"HARRY STYLES"** trademark: Federal Registration Number 5688195 for use in connection with International Class ("IC") 025 for clothing; IC 41 for entertainment services; IC 016 for printed matter; and IC 009 for pre-recorded materials. Declaration of Dar Jenkins ("Jenkins Decl.") ¶ 5.

Plaintiff is the exclusive licensee of the Artist, and the sole merchandiser for the Artist's authorized merchandise ("Authorized Tour Merchandise") which will be sold during the current tour. Jenkins Decl. ¶¶ 2-6.

Defendants currently identified as Does, also referred to as "Bootleggers," are engaged in the manufacture, distribution and sale of infringing T-Shirts and other merchandise that bear the federally registered trademark, service marks, likenesses, logos and other indicia of the Artist ("Infringing Merchandise" or "Bootleg Merchandise") and will do so at the concerts in this District and at other concerts on the tour. Jenkins Decl. ¶¶ 1, 8-19. Bootleggers have appeared on previous tours by this and other performers. To combat this, Plaintiff has obtained from this District and other Districts, temporary restraining orders and seizure orders, and thereafter nationwide preliminary injunctions and seizure orders to seize the Defendants' infringing merchandise for other performers. See Exhibits to Certificate of Counsel ("Burns Cert."). The Artist's tour has recently begun and so have Defendants' bootlegging activities, including at the Artist's prior Madison Square Garden concerts on October 3 and 4, 2021. See Jenkins Decl. ¶¶ 1, 9, and Exhibits thereto.

Plaintiff easily meets the showing required to obtain such relief and there is no defense to the claims brought by Plaintiff. Plaintiff is the exclusive licensee of the Artist, authorized to sell the Artist's Authorized Tour Merchandise during the tour. Jenkins Decl. ¶¶ 2-7. Plaintiff has therefore demonstrated a substantial likelihood that it will succeed on the merits. The Infringing Merchandise harms Plaintiff and the public in numerous ways. Each sale of Infringing Merchandise by Defendants is an irrecoverably lost sale for Plaintiff and Plaintiff's monetary losses would be substantial. Moreover, the loss and damage to the goodwill of both Plaintiff and the

Artist, through the distribution of inferior merchandise cannot be calculated or remedied. Jenkins Decl. ¶¶ 8-18; Burns Cert. ¶¶ 6-20.

The public interest will be served by issuance of the relief requested since it favors the protection of property/contractual rights. There is no potential harm to any legitimate interest of Defendants or any other persons if the requested relief is issued.  In addition, the relief requested here *is the only proven method of protecting Plaintiff's rights and the public* from inferior merchandise which bears a false designation of origin and sold by the Defendants, who are accountable to no one, whether for payment of royalties, sales taxes, or for quality control. Jenkins Decl. ¶¶ 8-19.

The need for an ex parte order is manifestly evident.  Defendants' actions are completely unauthorized, and Defendants have both the means and motivation to destroy vital evidence before a noticed hearing and avoid service.  Similar orders have been obtained to protect the rights of merchandisers and distributors thereon against bootleggers and their Infringing Merchandise. In response to these orders, although thousands of bootleggers have been served, bootleggers do not appear since apparently they know their activities are unlicensed and unlawful. See Burns Cert. Accordingly, Plaintiff requests that this Court issue the requested order.

III.     **DEFENDANTS SHOULD BE ENJOINED FROM SELLING, DISTRIBUTING, AND MANUFACTURING INFRINGING MERCHANDISE**.

A plaintiff seeking a temporary restraining order or preliminary injunction must establish: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in its favor. Malletier v. Burlington Coat Factory Warehouse Corp. 426 F.3d 532, 537 (2nd Cir. 2005) citing Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168, 173 (2nd Cir. 2000). In trademark

disputes, "a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) (citation omitted).

## A.   Defendants Have Violated Section 1125(a) and Serious Questions Are Raised.

Courts have repeatedly held that the use of registered and unregistered names, images and logos of performers by bootleggers causes irreparable injury and violates section 43(a) of the Lanham Act.   SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841, 853-854 (E.D. KY 2002) (nationwide seizure order issued since the sales by Doe Defendant Bootleggers of merchandise bearing the unregistered marks of the artist Toby Keith at his concerts violate section 1125 (a)); Nice Man Merchandising, Inc. v. Logocroft, Ltd., 23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) (use of trademarks, logos and likenesses of artists in defendants' merchandise without permission from plaintiff merchandiser "is likely to cause confusion, to cause mistake and to deceive. Such confusion and/or deception will continue to result in immediate and irreparable injury to plaintiff."); Winterland Concessions Co. v. Sileo, 528 F.Supp. 1201 (N.D. Ill. 1981), *mod. other grounds*, 735 F.2d 257 (7th Cir. 1984).

The purpose of the Lanham Act is "to protect persons engaged in . . . commerce against unfair competition" and "to prevent fraud and deception in such commerce."  15 U.S.C. §1127. This broad prohibition against "unfair competition" covers not only confusion as to source or sponsorship between Defendants' Infringing Merchandise and Plaintiff's Authorized Tour Merchandise, it also prohibits the misappropriation of the efforts of others. See Boston Athletic v. Sullivan, 867 F.2d 22, 33 (1st Cir. 1989) ("a party cannot reap where it has not sown"); R.H. Donnelley Corp. v. Illinois Bell Telephone, 595 F.Supp 1202, 1206 (N.D. Il. 1984) ("those who

invest time, money and energy into the development of a product and its accompanying good will should be allowed to reap the advantages of their investment").

To prevail in an action for unfair competition under § 43(a), a plaintiff must establish the same two factors necessary to prevail in an action for trademark infringement: (1) the mark must be legally protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers.  New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) (for purposes of injunctive relief, it is not necessary to show actual confusion or deception, but merely the likelihood of such).  These elements are clearly present here. The merchandise are goods, the Defendants travel from state to state and effect the sale of Plaintiff's merchandise during the tour and, because of the use of Plaintiff's marks, there is the false designation which is likely to confuse.

Factors to consider when determining whether a likelihood of confusion exists are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) consumers' sophistication in the relevant market. Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961).

Judged by these factors, Defendants' have violated the Lanham Act and there is no excuse of Defendants' use of Plaintiff's marks.  The Federally Registered trademark, as well as the other marks, likenesses, logos and other indicia of the Artist licensed to Plaintiff are strong marks, known to literally millions of members of the public. Defendants are using the same exact marks as Plaintiff and selling their Infringing Merchandise at the Artist's performances.   Using the

traditional scale of marks from the generic to the arbitrary, the Artist's marks are arbitrary in that they do not describe the goods to which they are attached but instead provide identification, thus they have acquired secondary meaning. Defendant Bootleggers will be copying the Artist's trademark, service marks, likenesses, and other indicia, therefore there can be no doubt as to consumer confusion.  Jenkins Decl. ¶¶ 9-19. Since Defendants are aware of the Artist's use of his trademark, there is a presumption of bad faith. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir. 1979) (deception may be presumed from the knowing adoption of a similar mark).

It is clear that the sale of Infringing Merchandise bearing the trademarks, service marks, likenesses, logos and other indicia of well-known performers constitutes a violation of §43(a) of the Lanham Act. SKS Merch, supra, Nice Man Merchandising, 23 U.S.P.Q. at 1292 ("the use of well-known performers' names and likenesses upon novelty merchandise without the performers' authorization constitutes a violation of § 43(a)").  As set forth by the District Court in Brockum Co. v. Blaylock:

> Defendant [Bootlegger] cannot obtain a "freeride" at the [exclusive licensee's] expense. Its shirts are designed to take advantage of the efforts and expenditures of the plaintiff and benefit from the goodwill associated with the Rolling Stones, their 1989 tour, and the promotion of the event created or undertaken by the plaintiff and the Rolling Stones. Such unlicensed use of the Rolling Stones' name would permit the defendant to reap where it had not sown. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 33 (1st Cir. 1989). Defendant's argument that the T-shirt in question merely celebrates an "event" is circular reasoning, at best, given the fact that there would be no "event" to celebrate, were it not for the hard work and financial outlay provided by the plaintiff. 729 F. Supp. at  444.

Defendants have manufactured Infringing Merchandise for the sole purpose of selling it at the Artist's concert. Defendants' intend to "free ride" on the Artist's marks that have acquired value through the extensive efforts of the Plaintiff/ Artist.  This is precisely the type of conduct Section 43(a) was designed to stop.

B.  **Defendants Have Violated Section 1114 and Serious Questions Are Raised.**

Plaintiff is likely to prevail on its § 1114 claim for the same reasons that it is likely to prevail under § 1125(a).  Under 15 U.S.C. § 1114, Plaintiff must show that Defendants have used the registered trademark: (1) without consent; (2) in connection with the sales of goods; and (3) where such use was likely to cause confusion or to deceive purchasers as to the source or origin of the goods. See New West Corp. v. NYM CO. of California, 595 F. 2d at 1201. ("The likelihood of confusion test also is used for claims of trademark infringement under 15 U.S.C. 1114.).  Since the Defendants use the federally registered mark on Infringing Merchandise and sell such goods at the very places where the Artist will be performing, there can be no doubt as to the confusion and intent of the Defendants.

C.      **Plaintiff Will Suffer Irreparable Injury.**

Irreparable injury is often presumed in the case of trademark infringement and Lanham Act violations, but since Supreme Court decision in eBay Inc. v. MercExchange, LLC, 547 U.S. 388 (2006),  some Courts find it may not necessarily be presumed.  But even if it were not, as set forth in the Jenkins Declaration, Plaintiff will be irreparably harmed by the sales by the Bootleggers. These peddlers appear at the venue, rarely have identification or keep records of their sales. In addition, irreparable injury is shown by the fact that Plaintiff has no control over the Infringing Merchandise or its quality, and, accordingly, will suffer a loss of goodwill due to sales of inferior Infringing Merchandise. SKS Merch, LLC, 233 F. Supp. 2d at 847 (although irreparable injury is presumed in trademark infringement, "Plaintiffs have independently established that they will be irreparably harmed absent a Preliminary Injunction enjoining the sale of bootleg merchandise related to Toby Keith throughout the nation.").

**D.  <u>The Threatened Injury to Plaintiff Outweighs Potential Harm to Defendants.</u>**

Plaintiff has demonstrated that the threatened injury to Plaintiff outweighs the potential harm to the Defendants. <u>Hard Rock Café v Pacific,</u> 776 F. Supp. 1454, 1463 (W.D. WA 1991) (valuable "Hard Rock Cafe" logo symbolizes the goodwill connected with [plaintiff's] business and that good will should not be jeopardized by placing it in the hands of [defendants].") Any inconvenience to Defendants will be merely economic, consisting of lost profits from sale of illegal, Infringing Merchandise (and a bond will be posted by Plaintiff).  Plaintiff will be seizing only Infringing Merchandise from those Bootleggers at the venues. Those in active concert with, or assisting the bootlegging, are also violating the Lanham Act and must be enjoined, as provided for by Rule 65.

Moreover, the public interest is furthered by issuance of a preliminary injunction.  Indeed, one of the essential purposes of the Lanham Act is to protect the consuming public from being misled as to the source of goods:

> While plaintiff is injured when consumers purchase [defendant's merchandise] believing it to be [plaintiff's merchandise], consumers, too are being directly victimized.   An injunction is thus in the public interest; only if the distribution of [defendant's goods] is stopped can further fraud be avoided.

<u>Corning Glass Works v. Jeannette Glass Co.</u>, 308 F. Supp. 1321, 1328 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970).  Public interest is especially strong when a federal statute expressly forbids the conduct in question.  Here, Defendants' acts in flagrant disregard of the laws. In sum, Plaintiff is entitled to injunctive relief.

**IV.   <u>PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING OF A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER.</u>**

**A.   <u>An Injunction and Seizure Order Are Necessary To Combat Defendants' Activities.</u>**

Courts have issued temporary restraining orders and seizure orders in advance of concerts to stop the sale of Infringing Merchandise. S<i>ee</i> Burns Cert. and Exhibits thereto.  This procedure is specifically authorized by 15 U.S.C. §1116 "upon such terms as the court may deem reasonable"

to prevent violations of Lanham Act.  See, In re Vuitton et Fils, S.A., 606 F.2d 1, 4 (2d Cir. 1979) and cases cited therein (court has inherent power to issue seizure orders); Universal City Studios, v. Kamma Industries, 217 U.S.D.Q. 1162 (S.D. Tex. 1982). See also Burns Cert.

Moreover, the Lanham Act specifically contemplates that a temporary restraining and seizure order against Infringing Merchandise may be had by ex parte application (Section 1116 (d)) and in enacting the Trademark Counterfeiting Act of 1984, Congress in no way intended to change existing case law, precedent under Rule 65, and the traditional equitable powers of a District Court under the Lanham Act, which have long been interpreted by numerous courts to authorize the issuance of ex parte seizure orders involving unregistered trademarks. The legislative history of the Act makes clear that it was not intended to supersede or negate the line of cases beginning with In Re Vuitton, 606 F.2d 1 (2d Cir. 1979), and the protection they provide.   Further, Section 1116 (d) authorizes ex parte orders where, in addition to the traditional requirements for injunctive relief: (1) an order other than an ex parte seizure order is not adequate, (2) the applicant has not publicized the requested seizure, and (3) the person against whom seizure would be ordered would destroy or otherwise make inaccessible to the court the infringing matters. 15 U.S.C. §1116(d)(4)(B).

In the instant case, defendant bootleggers have appeared at past concerts and will appear at the future concerts.  It is clear from the nature of their activities that they will be present in this jurisdiction only long enough to sell their Infringing Merchandise. After the Infringing Merchandise is sold, they will promptly disappear.  Even if Defendants received notice and were served with a proposed temporary restraining order, it is highly unlikely that they would voluntarily comply and not sell their goods.  *See* Jenkins Decl. and Burns Cert.  Simply stated,

there is no other means of preventing the Defendants from destroying Plaintiff's legitimate business without a seizure order.

A Court of Equity must be flexible and must be willing to issue an injunction appropriate under the particular circumstances of the case. See the All Writs Act, 28 U.S.C. § 1651 which broadly authorizes Federal Courts to issue "all writs necessary or appropriate in the aid of their respective jurisdiction and agreeable to the usages and the principles of law." Since there is no other remedy available to Plaintiff to this prevent irreparable injury, this Court has the power to order the seizure of the Infringing Merchandise as an exercise of its inherent power to obtain and retain jurisdiction in the matter.  In Joel v. Does, 499 F. Supp. 791 (E.D. Wisc. 1980), the Court stated:

> Were the injunction to be denied, Brockum would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights.  While the proposed remedy is novel, that in itself should not weigh against its adoption by this Court.  A Court of Equity is free to fashion whatever remedies will adequately protect the rights of the parties before it. Id. at 792.

**B.** **Rule 65 of The Federal Rules Of Civil Procedure And the Lanham Act Provide Authority For The Ex Parte Relief Plaintiff Seeks.**

Rule 65 of the Federal Rules of Civil Procedure permits the issuance of an ex parte temporary restraining order when failure to issue such an order would result in "immediate and irreparable injury, loss, or damage," and movant demonstrates why notice should not be required. The irreparable harm from Defendants selling and distribution activities has been shown. It will continue to mount until Defendants are enjoined.  Since Defendants have the temerity to conduct blatantly unlawful activities, making a business of selling infringing articles, and have an economic interest in continuing their unlawful actions, there is no reason to believe they will voluntarily stop.

The Court in <u>Vuitton</u>, found that immediate and irreparable injury existed because of the substantial likelihood of confusion created by the itinerant Bootleggers selling their infringing goods that plaintiff had shown why notice should not be given:

> [A]lthough this Court has frowned upon temporary restraining orders issued even without telephone notice there are occasions when such orders are to be countenanced. In our judgment, this case is just such an occasion.  [***] Assuming that all of the other requirements of Rule 65 are met, the Rule by its very terms allows for the issuance of an ex parte temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required."  In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1). [* * *] If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action.  This is precisely contrary to the normal and intended role of notice, and it is surely not what the authors of the rule either anticipated or intended.  606 F.2d at 4-5.

## C.   It Is Appropriate To Issue A Temporary Restraining And Seizure Order To   Enjoin Activities Of Persons Whose Identities Are Presently Unknown

Plaintiff is proceeding to stop the bootlegging activities of Defendants whose identities are presently unknown. Courts have long recognized that known adversaries may be designated as "John Does" until plaintiff is able to specifically identify them.  See <u>SKS Merch</u>, <u>supra</u>, <u>John Hancock Mutual Life Ins. Co. v. Central National Bank in Chicago,</u> 555 F. Supp. 1026 (N.D. Ill. 1983).  Plaintiff need not await the consummation of the threatened injury to obtain preventive relief.  <u>Babbitt v. United Farm Workers National Union</u>, 442 U.S. 289, 298 (1979); <u>Bivens v. Six Unknown Names Agents</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff need not await the consummation of the threatened injury to obtain preventive relief.  See <u>Babbitt v. United Farm Workers etc.</u>, supra at 298; <u>Bivens v. Six Unknown Agents</u>, supra.

In similar circumstances, many federal courts have issued seizure orders against Doe Defendants to seize infringing merchandise associated with the tours of well-known performers.  See Exhibits to the Burns Cert. In each case, an ex parte seizure order was issued against

unidentified "Doe" defendants to prevent the sale of and to seize infringing merchandise bearing the trademarks and other indicia of performers represented by the plaintiff in those actions. In <u>Billy Joel v. Does</u>, <u>supra</u>, the District Court held that, although the court does not favor unknown defendants and may not have in personam jurisdiction, regarding Bootleggers:

> I am convinced that the requested injunction [and seizure order] should issue in the present case. ... The problem of the defendants' identities is met, I believe, by the fact that copies of the summons, complaint, and restraining order itself will be served on all persons from whom Billy Joel merchandise is seized on the night of the concert.  These parties will be asked to reveal their names so that they can be added as parties to the law suit.  [* * *] [w]ere the injunction to be denied, plaintiffs would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights. 499 F. Supp. at 792.

If courts failed to recognize "Doe" Defendants, clever wrongdoers could (and will) easily conceal their identities until a statute of limitations run out, or, as here, they leave Plaintiff with no practical recourse for clear violations of their rights. <u>Moon Records</u>, 217 U.S.P.Q. 39 (N.D. Ill. 1981) ("the problem regarding the identity of the defendants will be met by requiring copies of the complaint and the [order] to be served upon all persons from whom infringing merchandise is seized..."). Consistent with Fed. R. Civ. P. Rule 4(j), Plaintiff's process servers will make every reasonable effort to further identify the Defendants for purposes of amending the pleadings.

It has been the repeated experience of Plaintiff and Plaintiff's counsel that most, if not all, of the Bootleggers are persons extremely experienced with selling Infringing Merchandise.  Most are not neophytes, but rather somewhat sophisticated businessmen who operate in stealth to thwart the legitimate rights of Plaintiff. Bootleggers travel around the country from venue to venue selling their counterfeit wares.  Many defendants even have the audacity to print the entire tour schedule of performers such as the Artist on the back of the bootleg T-shirts which they sell.  Any person found selling a shirt bearing the entire Tour schedule can fairly be said to be "aiding and abetting, or acting in active concert with," served Defendants who have sold similar shirts at other concerts.

V.     **A MULTI DISTRICT INJUNCTION AND SEIZURE ORDER IS BOTH NECESSARY AND PROPER.**

A.     **Courts Have Issued Nationwide Injunctions and Seizure Orders**.

It has been shown by the declaration submitted in this matter that the sale of Infringing Merchandise by the Defendants is in violation of the Lanham Act and causes deception to the public.  As such, all remedies under the Lanham Act are appropriate. The multi-district relief sought has been granted in numerous cases in other jurisdictions across the country in factual and legally nearly identical circumstances. See Burns Cert.  It is specifically authorized by statute. Section 1116 provides for enforcement and service "anywhere in the United States where [Defendants] may be found." 15 U.S.C. § 1116(a).  See Burns Cert. and Jenkins Decl. Further, Fed. R. Civ. P. Rule 65 provides that an order granting injunctive relief binds the parties, as well as those related and those in active concert or participation with them who receive actual or other notice of an order even if beyond the territorial limits of the district court enjoining said activity. Fed. R. Civ. P. 65(d). See, Nintendo of America v. NTDEC, 822 F. Supp. 1462, 1466, 1468 (D. Ariz. 1993) (the Court issued a worldwide injunction requiring defendants to deliver up infringing goods for destruction); Golden Door, Inc. v. Oisho, 437 F.Supp. 956, 968 (1977) ("plaintiff's market area, and hence, sphere of reputation, are nationwide. . . . [Therefore t]he scope of the injunction must therefore be nationwide"); Benson v. Paul Winley Record Sales Corp., 452 F. Supp. 516 (S.D.N.Y. 1978); The Five Platters, Inc. v. Purdie, 419 F. Supp. 372 (D. Md. 1976) ("the Lanham Act provides for nationwide enforcement of injunctions").  The propriety of such a multi-district order has long been established by numerous court orders throughout the country. As explained by the Fifth Circuit in Waffenschmidt v. Mackay, 763 F. 2d 711 (1985):

> Non-parties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order.  This is so despite the absence of

13

other contacts with the forum. [ * * * ]  Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.  Id. at 714, 716 (citations omitted).

SKS Merch, LLC v. Barry, supra, and Plant v. Does, 19 F. Supp.2d 1316 (S.D. Fla. 1998) are the main decisions that address the issues in this matter. In each case the plaintiff merchandiser sought nationwide injunctions and seizure orders to enforce the rights of performers during a nationwide tour. The District Court in SKS Merch, after careful review of the Plant decision, as well as other adverse decisions, granted the nationwide injunction and seizure order to seize the infringing merchandise.

The Court in SKS Merch noted that Plaintiff in Plant did not identify defendants. As set forth in the Jenkins Declaration and the Certificate of Counsel, Defendants have already appeared and will continue to appear as they have in all past actions for tours of this magnitude, as shown by the prior seizure orders granted for this specific Artist and his former group.  See also World Wrestling v. Unidentified Parties, 770 F. 3d 1143, 1147 (5th Cir 2014) (for seizure of merchandise at performances, identification met because although plaintiff "cannot know in advance the specific identities of counterfeiter who will present themselves at any given event, …it does know that any non-affiliated seller at or near an event is almost certainly a counterfeiter."). The harm to Plaintiff, however, is irreparable. The SKS Merch Court recognized what has been the modus operendi of these Bootlegger Defendants – that they fail to carry identification, they are well aware the goods they sell are unauthorized, and they often flee when approached by authorized individuals. Id., at 849. See also Jenkins Decl. and Burns Cert.  To require Plaintiff to wait further for "identification" - since the defendants usually do not provide any -- would seriously impede its and Plaintiff's rights.

14

Although the plaintiff in <u>SKS Merch</u> waited for several performances after the bootlegging activities began before seeking relief, Plaintiff here requests that it should not wait so long; the harm is clear and irreparable.  With each performance Plaintiff will be harmed, the bootlegging will continue and the only one who will gain, and gain momentum, will be the defendants.  Further, the Court in <u>Plant</u> was concerned that no "procedural means" existed to issue and enforce the injunction. The Court in <u>SKS Merch</u> held section 1116 permits such injunctions. See also Burns Cert.

Moreover, it is contemplated this relief is to be had on the basis of an ex parte application, not a noticed motion.  In addition, concerns about service raised in <u>Plant</u> are addressed here as they were in <u>SKS Merch</u>; Defendants' names may be added after service has taken effect and names (preferably proper) will be provided. Because the Infringing Merchandise is the same from location to location, this represents a concerted effort and therefore the Defendants are on notice. Further, Defendants always have an opportunity to be heard.  Local orders throughout the country will not afford Defendants any greater protection.

B.    **<u>The Court Will Have Jurisdiction Over The Defendants and Those Acting In Concert With Them.</u>**

Once the Defendants have been served at the Concerts here in New York, this Court acquires personal jurisdiction over them. Fed. R. Civ. P. Rule 4.  See <u>John Hancock Mutual Life Ins. Co. v. Central Nat'l Bank</u>, 555 F. Supp. 1026 (N.D. Ill. 1983) (service of process under Rule 4 confers jurisdiction on this Court even with respect to Doe defendants).  At the preliminary injunction hearing, this Court should enjoin all the Bootlegging activities during the entirety of the Artist's nationwide tour.  Absent such a nationwide injunction, complete relief here would be impossible to achieve; separate orders would have to be sought at every location on the tour, resulting in a terrible waste of the parties' and the federal courts' resources.  As a result, this Court,

15

and many others, have issued nationwide preliminary injunctions and seizure orders to stop bootlegging.  See Burns Cert. and Jenkins Decl.  In addition, 15 U.S.C. § 1116, specifically provides for enforcement of a Court's order in other districts.

The nationwide injunction will be effective against all persons involved in Defendants' Bootlegging operation.  An order granting injunctive relief will bind not only the actual named parties to an action, but also "their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the Order by personal service or otherwise."  Fed. R. Civ. P. Rule 65(d).  Vuitton, Et Fils, S.A. v. Carousel Handbags, 592 F.2d 339, 344 (9th Cir. 1979) (a court may bind parties to preserve its ability to render a judgment in a case over which it has jurisdiction); McGraw Edison Co. v. Performed Line Products, 362 F.2d 339, 344 (9th Cir.) cert. denied, 385 U.S. 919 (1966) (non-parties may be found in contempt of an injunction if they have actual notice of the order, and aid and abet in its violation).

The bootlegging operation to be enjoined here is a concerted action of many individuals acting together.  The nature and quality of merchandise seized indicates a concerted operation as Plaintiff's servers often observe the same individuals selling Infringing Merchandise at each of the performer's tour dates. The quantities of such merchandise indicates a large manufacturing operations.  Bootleggers or their infringing goods go from one location on the tour to another. Therefore, the relief granted to Plaintiff must continue for all concerts to be effective.  Jenkins Decl. ¶¶ 9-18.

Each time there is a seizure pursuant to the order, the requirement of notice to the person against whom the relief operates will be satisfied.  Once the preliminary injunction is issued it will be served on anyone selling Infringing Merchandise on the tour.  They will therefore have notice of the injunction at the concert and when their goods are seized.  A nationwide preliminary

injunction against Defendants, those acting in concert with them and others is appropriate and required if Plaintiff is to obtain relief from Defendants' concerted unlawful acts.

C. **The Order Binds Those Who Participate In The Defendants' Unlawful Conduct**.

By an appropriate bond placed with this Court by Plaintiff, Defendants always have the right to be heard and are guaranteed a source of recovery for any wrongdoing whatsoever to them. The only effective way for Plaintiff to obtain relief is to have this Court enter a preliminary injunction and seizure order, the mandate of which will be respected across this country. If the relief is not granted, Defendants will continue to use the names and goodwill associated with the Artist and Plaintiff who has spent many years, and vast sums of money to cultivate.

It is believed that all seizures will be made upon Bootleggers selling identical or substantially identical goods throughout the country and will be through a concerted operation. See Jenkins Decl. However, in the unlikely event that any individuals spontaneously decide to print their own "homemade" shirts, such individuals would be violating Plaintiff's rights and would be subject to suit in any event. Seizure of such shirts, if any exist, would be virtually identical to a local order issued in that district, which would not afford them any greater notice or due process. Moreover, requiring Plaintiff to go throughout the United States would impose a great burden upon both Plaintiff and the judicial resources of the Federal Courts. However, to avoid even a theoretical question, Plaintiff will waive any objections to venue and transfer the action, though notably, no defendant bootlegger has appeared in any action filed by the Plaintiff. See Burns Cert.

D. **Defendants Have A Full And Fair Opportunity To Be Heard.**

Although it is not known at this time whether any Defendants will appear before the Court on the return date to oppose the requested relief, given our experience, it is doubtful that any will do so. However, they certainly have that opportunity. Plaintiff would welcome such appearances

for it would permit it to identify the bootleggers, take discovery from them, discover their printing

sources and pursue them for money damages.  The proposed Order will provide that a person who

wishes to challenge the seizure has the opportunity to file a motion with this or any other Court

requesting a hearing within a certain number of days subsequent to the seizure.  This gives any

defendant a full and fair opportunity to be heard, while the merchandise, the critical piece of

evidence, is preserved.  However, without the proposed nationwide injunction and seizure order,

Plaintiff will be forced to file separate civil actions in the United States District Courts throughout

the country at an estimated expense of well over $300,000 in legal fees and costs.  Thus, it would

be inequitable to place such an enormous and unnecessary burden on Plaintiff whose rights are

clear and there's a remedy that works.

## VI.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that its application be granted.

Dated:  October 7, 2021                              Respectfully submitted,

By
Mark Bradford (MB 6002)
Mark Bradford, PC
299 12th Street
Brooklyn, New York 11215-4903
Tel: (347) 413-3287
mb@markbradfordpc.com

Cara R. Burns (CB 1071)(PHV to be requested)
Hicks, Mims, Kaplan & Burns
2800 28th Street Ste 383
Santa Monica, CA 90405
Tel: (310) 314-1721/Fax: (310) 314-1725
cburns@hmkblawyers,com

Attorneys for Plaintiff