**Mark Bradford (MB 6002)**
**MARK BRADFORD, PC**
**299 12th Street**
**Brooklyn, New York 11215-4903**
**Telephone: (347) 413-3287**
**mb@markbradfordpc.com**

**Cara R. Burns (CB 1071) (PHV to be requested)**
**HICKS, MIMS, KAPLAN & BURNS**
**28202 Cabot Road, Suite 300**
**Laguna Niguel, California 92677**
**Telephone: (310) 314-1721**
**Facsimile: (310) 314-1725**
**cburns@hmkblawyers.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____x

| | |
|---|---|
| **MERCH TRAFFIC, LLC,** | CIVIL ACTION NO. |
| Plaintiff, | DECLARATION OF OF DAR JENKINS |
| v. | IN SUPPORT OF EX PARTE APPLICATION FOR: A |
| **JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY,** | TEMPORARY RESTRAINING ORDER; SEIZURE ORDER; AND ORDER TO SHOW CAUSE |
| Defendants. | WHY A PRELIMINARY |
| _____x | INJUNCTION AND SEIZURE ORDER SHOULD NOT ISSUE |

I, Dar Jenkins, hereby declare as follows:

1.      I make this declaration in support of Merch Traffic, LLC's ("Plaintiff") ex-parte application for: a temporary restraining order; seizure order; and an order to show cause why a preliminary injunction and seizure order to issue in the above referenced matter to halt the sale of and to seize infringing merchandise bearing the federally registered trademarks, service marks, likenesses, logos and other indicia of the musical

1

artist **"HARRY STYLES"** (the "Artist") during his nationwide tour, including performing at Madison Square Garden in New York, New York on October 16, 30 and 31, 2021. Similar orders have been granted by this District and other District Courts to this Artist, his former group ("**ONE DIRECTION**") and to other performers. See Certificate of Counsel and Exhibits thereto, including: Live Nation Merchandise, Inc. v. Does, Case No. 3:17-cv-1275 (M.D. TN 2017) (Judge Trauger) (for Harry Styles' tour); F.E.A., Inc. v. Does, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One Directions' tour); F.E.A. Inc. v. Does, Case No. 15-cv- 1438 CAB (S.D. CA 2015) (Judge Bencivengo) (for One Direction's tour); and F.E.A. Inc. v. Does, Case No. 14-cv-13160 RWZ (S.D. CA 2014) (Judge Zobel) (for One Direction's tour), among others. The tour has just begun and so have Defendants' bootlegging activities, including at the Artist's prior Madison Square Garden concerts on October 3 and 4, 2021.  See Exhibits C and D herein.  I have personal knowledge of the facts set forth herein and am authorized by Plaintiff to make this declaration.  If called as a witness, I could and would be able to testify competently to such facts.

2.     Plaintiff is engaged in the business of manufacturing, distributing and selling authorized merchandise such as T-shirts, sweatshirts, and posters, among other merchandise bearing the federally registered trademarks, service marks, likenesses, logos, and other indicia owned by popular performers (collectively "Tour Merchandise"). Plaintiff has obtained the exclusive right to distribute authorized merchandise (collectively "Authorized Tour Merchandise") at all concerts in the United States and elsewhere (the "Tour") bearing the federally registered trademarks, service marks, likenesses, logos and other indicia of the Artist (collectively the "Artist's Trademarks").  A copy of the Artist's

current Tour itinerary is attached as Exhibit A and is incorporated by this reference as though fully set forth herein.

3. I am Senior Vice President, Touring and Artist Services for Plaintiff. I have worked in merchandising relating to performers since 1989. I started working in this area at a company called Brockum, and thereafter worked for Plaintiff and its predecessor entities, Live Nation Merchandise, Inc., and prior to that F.E.A., Inc. In total, I have been employed continuously for over 30 years working in the same field; merchandising for performers including on their tours, and for the last approximately 20 years, I have been in charge of merchandising and bootleg (that being unauthorized merchandise containing the trademarks and associated marks of a performer) security for the tours of performers. I have personally supervised merchandising and security on over 50 musical tours, including for 1 prior HARRY STYLES tour and 3 prior ONE DIRECTION tours (seizure orders obtained in 2012, 2014 and 2015 for ONE DIRECTION and 2017 for HARRY STYLES). Other performers for which I have supervised merchandising and bootleg security include the Eagles, Paul McCartney and Bruce Springsteen and the E Street Band.

4. "HARRY STYLES" is the trademark of this very prominent and successful musical performer. The Artist gained his initial popularity as part of the musical group known as "ONE DIRECTION" (the "Group") and now as a solo artist. The Artist began performing in 2010 and soon after appeared on the enormously popular show "X Factor". The Artist has released 2 solo albums, "Harry Styles" and "Fine Line" both of which debuted at Number 1 on the Billboard's List of the Top 100 Albums. The later album was named by Rolling Stone (music) magazine as one of the 500 Greatest Albums of All Time. The Artist's well known singles include "Watermelon Sugar", "Sign of the Times", "Lights

Up", "Adore You", and "Treat People With Kindness". The Artist individually and with his former Group, have sold over 80 million units of recordings worldwide, over 40 million units in the US alone.  The Artist has appeared on Saturday Night Live twice, including one time as both the host and musical artist, the Late, Late Show with James Corden.  The Artist has been nominated for and won numerous awards including in 2020 the Artist won the American Music Award - Favorite Pop and Rock Album for "Fine Lines", the Chart Achievement Award at the Billboard Music Awards, Variety Magazine's Hitmaker of the Year Award and the National Academy of Recording Arts and Sciences "Grammy" Award for Best Pop Solo Performance for "Watermelon Sugar".  The Artist has also been featured in the well-known movie "Dunkirk" distributed nationwide. The Artist's performances have been broadcast on MTV, VH1, and other cable and network programs broadcast nationwide. The Artist has also appeared in numerous magazines distributed nationwide including the New York Times, the New York Daily News and Rolling Stone.

5.      The Artist has obtained a US Federal Trademark registration for his HARRY STYLES trademark: Federal Registration Number 5688195 for use in connection with International Class ("IC") 025 for clothing, namely, T-shirts, shirts, jackets, sweatshirts, hooded tops, hooded sweatshirts, pullovers, jumpers, shorts, boxer shorts, boxer briefs, underwear, underclothes, under garments, socks, scarves, dressing gowns, pajamas, dungarees, braces, ties, lingerie, hosiery, bathing suits, bathing trunks, bathrobes, gloves, jeans, kilts, nightwear, pajamas, slacks, sleeping garments, sleepwear, suits, swim wear, and trousers, among other items of clothing; IC 041 for entertainment in the nature of participation in musical recordings, musical performances, performances by a musical groups and members thereof, celebrity interviews, performance of spoken word,

participation in artistic performances, and participation in concerts, among other related services; IC 016 for printed matter, namely, magazines, newspapers, newsletters, books, brochures, flyers, pamphlets, posters, decals, bumper stickers, postcards, pictures, diaries, souvenir event programs, printed event and concert tickets, calendars, photographs, signed photographs, picture books, songbooks, sheet music, cardboard and paper badges, and paper flags, among other printed matter; and IC 009 for pre-recorded CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, and artistic performances, among other similar products.

6. This Tour is highly anticipated, so many of the Artist's concert dates are sold out or almost sold out. Because of the Artist's status among popular music enthusiasts, the Tour is expected to be a very successful and Plaintiff anticipates that other dates will be added to the current itinerary. The Tour involves many large-capacity venues, i.e., arenas seating in excess of 10,000 people. Income from the sales of Authorized Tour Merchandise is expected to be very substantial.

7. The Artist derives income and promotes his image in part from sales of recordings and live performances, and in part through the sale of merchandise associated with him. The Artist and Plaintiff spend a great deal of care, time and money to develop merchandise associated with the Artist. Care is taken that the Authorized Tour Merchandise bearing the Artist's Trademarks is of a high quality and are appropriate to his image.

8. Concerts by the Artist, and other performers of his stature have recurring problems with individuals who sell infringing Tour Merchandise near, at and sometime

participation in artistic performances, and participation in concerts, among other related services; IC 016 for printed matter, namely, magazines, newspapers, newsletters, books, brochures, flyers, pamphlets, posters, decals, bumper stickers, postcards, pictures, diaries, souvenir event programs, printed event and concert tickets, calendars, photographs, signed photographs, picture books, songbooks, sheet music, cardboard and paper badges, and paper flags, among other printed matter; and IC 009 for pre-recorded CDs, DVDs, digital audio tapes, digital audio cassettes, high definition video discs, mini-discs, video records, video tapes, video cassettes, video discs and flash drives featuring music, musical recordings, musical performances, musical entertainers, motion picture films, and artistic performances, among other similar products.

6. This Tour is highly anticipated, so many of the Artist's concert dates are sold out or almost sold out. Because of the Artist's status among popular music enthusiasts, the Tour is expected to be a very successful and Plaintiff anticipates that other dates will be added to the current itinerary. The Tour involves many large-capacity venues, i.e., arenas seating in excess of 10,000 people. Income from the sales of Authorized Tour Merchandise is expected to be very substantial.

7. The Artist derives income and promotes his image in part from sales of recordings and live performances, and in part through the sale of merchandise associated with him. The Artist and Plaintiff spend a great deal of care, time and money to develop merchandise associated with the Artist. Care is taken that the Authorized Tour Merchandise bearing the Artist's Trademarks is of a high quality and are appropriate to his image.

8. Concerts by the Artist, and other performers of his stature have recurring problems with individuals who sell infringing Tour Merchandise near, at and sometime

inside a concert venue. These individuals are referred to as "Bootleggers," their activities are known as "Bootlegging" and their goods are referred to as "Bootleg Merchandise" or "Infringing Merchandise."

9. On the Artist's prior tours individually and with his former Group, and on tours by performers of the caliber and following of this Artist, Defendant Bootleggers have appeared selling their unlawful goods. In order to combat this, Plaintiff and other merchandisers have obtained temporary restraining orders and seizure orders, and thereafter preliminary injunctions and nationwide seizure orders to seize the infringing merchandise from the Defendant Bootleggers. See Certificate of Counsel of Cara R. Burns, filled herewith, and its Exhibits, including 3 tour seizure orders obtained for the Artist and his former Group's tours. Further, the Artist's tour has just begun, and as my staff has observed Bootleggers have appeared selling their Infringing Merchandise. For example, attached hereto as Exhibit C are true and correct copies of photographs taken of infringing shirts (shirts bearing the Artist's trademarks) being sold by Bootleggers at the Artist's Sunday, October 3rd and Monday, October 4th concerts at Madison Square Garden in New York, New York, as well as at the Artist's Friday October 1st concert at Bridgestone Arena in Nashville, Tennessee. Further, attached hereto as Exhibit D are true and correct copies of photographs of the Bootleggers selling infringing shirts at those concerts.

10. In my experience, based on prior HARRY STYLES and his former Group's tours, as well as over 50 other tours of other major performers during my many years in this business, the Bootlegging problem has grown with the popularity of popular music tours. In virtually every instance, the Defendants sell identical shirts, indicating that they are supplied from a common source. Individual Bootleggers are recognized from venue to

venue as they follow the tours, or they arrange to have local individuals sell the Infringing Merchandise for them.

11. My staff and I frequently observe the same individuals selling Infringing Merchandise at many of the venues for each performer; they follow a tour themselves or arrange to have local individuals sell the Infringing Merchandise for them.  We usually see a few similar designs being sold by the Defendants throughout the tour, as we have with this Tour. Many designs also have some of all of the tour dates on them, this indicates that they will continue to go from venue to venue and sell their Infringing Merchandise. These facts show that the Defendants are working together since there are hundreds of thousands of images of the Artist and designs associated with him available on the internet for someone to use in their Infringing Merchandise, yet usually the same or substantially similar designs repeatedly appear on the Infringing Merchandise sold during a tour.

12. In the present circumstances, given the Artist's popularity, it is not difficult to understand the motives of the Defendants. All of the concerts on this Tour are expected to be sold out or nearly sold out.  The Artist will perform before hundreds of thousands of people by the Tour's end.  The fans attending the various concerts frequently seek to purchase a souvenir, such as a T-shirt.  Defendant Bootleggers are typically located outside the concert venues and therefore have the first and last opportunity to make these sales. Further some Defendants sell their Infringing Merchandise inside the venues.

13. Without the order we seek, when members of my staff inform the Defendants that they are selling Infringing Merchandise, they usually just walk away and/or continue to sell the Infringing Merchandise. The Defendants do not respond when we ask for their names.  All Defendants Bootleggers ignore our requests to stop selling

infringing merchandise.  The Defendant Bootleggers respond that they want to see our "injunction" or "order" or else they will not stop their unlawful activities.  From the nature and context of their statements, it is obvious that the "injunction" or "order" they refer to is a search, seizure and impoundment order that we seek from this court.   The merchandise they were selling and offering for sale had the places where the tour would be performing.  Their bootleg merchandise contained the trademarks, as well as designs, images and logos of the tour which are exclusively licensed to Plaintiff to be sold at venues.

14.     Bootlegging activities greatly injure musical performers, including the Artist, and legitimate merchandisers, including Plaintiff, in several ways.  The Defendant Bootleggers are not bound by contract to provide first-quality apparel and graphic designs, as is required of Plaintiff.  Further, the Defendant Bootleggers can drastically undersell us, a legitimate merchandiser, because, unlike Plaintiff, Defendant Bootleggers have no obligation to pay the Artist royalties and or pay any part of their sales to the concert venue and the many local individuals employed who sell the legitimate, authorized merchandise at the concerts.  This ability to undersell the legitimate Authorized Tour Merchandise is also enhanced by the fact that Defendant Bootleggers do not collect or pay sales or other taxes.

15.     The consumer, the fans of the Artist, also suffer.  Infringing Merchandise is an inferior imitation which rarely lasts very long. The quality of the T-shirts and the designs are poor; many T-shirts appear to be seconds and the colors on the designs tend to "run" or "bleed" into each other. The fans are disappointed and, in their confusion as to the source of the Infringing Merchandise, blame the performers.  This affects future legitimate sales

and also tends to create a negative feeling by the fans directed against the performers, which may in turn cause decreased record sales and concert attendance.

16. The Defendants' Infringing Merchandise is intended and will cause the general public to believe that their Infringing Merchandise is authorized, approved and sponsored by the Artist. Consequently, not only does the sale of this Infringing Merchandise violate Plaintiff 's exclusive rights, but also causes the general public to be adversely affected and irreparably harms Plaintiff's and the Artist's reputations for excellence and integrity in the legitimate Authorized Tour Merchandise.

17. The unchallenged presence of Defendant Bootleggers in our marketplace severely damages the market and Plaintiff's business at every level. The precise damage to Plaintiff is incalculable. The Infringing Merchandise sells for approximately half the price (or less) of the genuine Authorized Tour Merchandise and the people involved in the illegal merchandising activities keep no records. Based on my vast past experience with such Defendants, I believe these Defendants would dispose of or destroy any Infringing Merchandise or related documents should they be alerted that legal proceedings be commenced against them. Further, the incalculable damage caused by the Defendants deprives the rightful owners of their return. Accordingly, we seek to stop the Bootlegging activities of the Defendants by are seeking the assistance of this Honorable Court to obtain an order allowing the seizure of Infringing Merchandise, a most important piece of evidence.

18. The people who serve the orders and seize infringing merchandise consist predominately of off-duty law enforcement officers who are well versed and trained in seizing infringing merchandise. They will seize only the infringing merchandise and

provide receipts. They *do not* make arrests, as it is a civil seizure order. The objectives are to serve the restraining and seizure order, preserve the infringing merchandise, see if Defendant Bootleggers will provide contact information (which they rarely provide), and provide a receipt, then move onto the next bootlegger.

19. I believe the difficulties in identifying the Defendants, including that they have no fixed place of business and no assignable assets, makes them virtually immune to normal process or to any process except by way of restraining order against persons unknown to allow the seizure of the Infringing Merchandise pending a final disposition by this Honorable Court.

20. Plaintiff is a substantial and successful business and will be able to meet any order made to compensate and any defendant for any damages suffered by as a result of any order obtained on our behalf. However, in my experience, no Bootlegger has ever appeared at an order to show cause hearing or sought relief in the countless number of nationwide seizure orders. Plaintiff also requests that it be appointed substitute custodian for the unlawful merchandise it requests the Court to permit it to seize.

21. In short, absent protection from the courts in the form of a seizure order, the Defendants have an insurmountable advantage over the performers and legitimate merchandisers who obtain the right to use performers' trademarks, service marks, likenesses, logos and related rights. Left unprotected, merchandisers will be unable to offer performers appropriate sums for these rights. This in turn limits the performers' ability to stage unique and exciting concerts for their fans. The injury affects the Artist, the exclusive licensee (Plaintiff), and the fans.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct. Executed October 7, 2021.

_____
DAR JENKINS