**Mark Bradford (MB 6002)**
**MARK BRADFORD, PC**
**299 12th Street**
**Brooklyn, New York 11215-4903**
**Telephone: (347) 413-3287**
**mb@markbradfordpc.com**

**Cara R. Burns (CB 1071) (PHV to be requested)**
**HICKS, MIMS, KAPLAN & BURNS**
**28202 Cabot Road, Ste 300**
**Laguna Niguel, California 92677**
**Telephone: (310) 314-1721**
**Facsimile: (310) 314-1725**
**cburns@hmkblawyers.com**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
──────────────────────────────x

| | |
|---|---|
| **MERCH TRAFFIC, LLC,** | **CIVIL ACTION NO.** |
| Plaintiff, | **F.R.C.P. RULE 65 CERTIFICATE OF COUNSEL OF CARA R. BURNS IN SUPPORT OF EX PARTE APPLICATION FOR: A TEMPORARY RESTRAINING ORDER; SEIZURE ORDER; AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION AND SEIZURE ORDER SHOULD NOT ISSUE** |
| v. | |
| **JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY,** | |
| Defendants. | |

──────────────────────────────x

I, CARA R. BURNS, hereby certify and affirm as follows:

1.   I have personal knowledge of the facts set forth herein and if called as a witness, I would be able to testify competently to such facts. I make this certificate in support of Plaintiff, Merch Traffic, LLC's ("Plaintiff") ex parte application for: a temporary restraining order; seizure order; and an order to show cause regarding why a preliminary injunction and seizure order should not issue, prohibiting the sale of infringing merchandise bearing the federally registered

1

trademarks, service marks, likenesses, logos and/or other indicia of the musical performer known as "HARRY STYLES" (the "Artist ") during his tour. The Artist's tour has just begun and so have the activities of Defendant Bootleggers, including at the Artist's recent performances at Madison Square Garden and will continue at his upcoming concerts including additional concerts at Madison Square Garden. See Declaration of Dar Jenkins ("Jenkins Decl.") ¶¶ 1, 9.  The order sought is similar to ones previously granted by this and other District Courts to the Artist and his former group (ONE DIRECTION) for their tours, including from this District: <u>F.E.A., Inc. v. Does</u>, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One Direction's tour); from other Districts including <u>Live Nation Merchandise, Inc. v. Does</u>, Case No. 3:17-cv-1275 (M.D. TN 2017) (Judge Trauger) (for Harry Styles' tour), and from this District for other performers including: <u>Live Nation Merchandise, Inc. v. Does</u>, Case No. 18-cv-7551 LAP (S.D. NY 2018) (Judge Preska) (for Drake's tour);  <u>Live Nation Merchandise, Inc. v. Does,</u> Case No. 16-cv-0336 LAK (S.D. NY 2016) (Judge Kaplan) (for Bruce Springsteen's tour); and  <u>F.E.A., Inc. v. Does</u>, Case No 12-CV-1313 PGG (S.D. NY 2012) (Judge Gardephe) (for Van Halen's tour), among others.  See paragraph 6 *infra*.

      2.      I am a member of the firm of Hicks, Mims, Kaplan & Burns, attorneys for Plaintiff in the above captioned action and may be requesting admission pro hac vice in this matter.  I am admitted to practice in the state of California and before the United States District Courts for the Central, Southern, Eastern and Northern Districts of California, the United States District Court for the Southern District of Texas, the United States District Court for the District of Colorado, the United States District Court for the District of Arizona, the United States District Court for the Eastern District of Michigan, the United States District Court for the District of Hawaii, and the United States of Court of Appeals for the Ninth and Fifth Circuits.  I have represented Plaintiff on

a nationwide basis, against the unlawful activities by Bootleggers that violate my client's contractual and legal rights.

3. Rule 65(b)(2) of the Federal Rules of Civil Procedure requires that for the Court to grant such an order without notice, "the applicant's attorney [must certify] to the court . . . the reasons supporting [her] claim that notice should not be required." Matter of Vuitton et Fils S.A., 606 F.2d 1, 3 (2d Cir. 1979). See also Local Rule 6.1 (d).

4. I have concentrated a substantial portion of my practice in the area of anti-counterfeiting matters for clients such as the Plaintiff and its predecessors (Live Nation Merchandising Inc., and F.E.A., Inc.) for over 20 years, and for Bravado International Group Merchandising Services, Inc., and Giant Merchandising (other tour merchandisers), Motorola, Inc., Alfred Dunhill, Ltd., Warner Bros., Inc., Mattel, Inc., Novell, Inc., the United States Olympic Committee, and the Software Publishers' Association. I have taught intellectual property and entertainment law at USC Annenberg School of Communications (graduate school) and lectured on these subjects at universities and for continuing education. Articles regarding my representation of rights holders and the use of nationwide orders have appeared in the Boston Globe and The Rocky Mountain News. I have filed numerous ex parte temporary restraining and seizure orders, some of which are set forth in paragraph 6 herein.

5. As set forth more fully in the Declaration and the complaint, both filed concurrently herewith, Plaintiff has the exclusive right to sell merchandise at tour venues bearing the federally registered trademark, service marks, likenesses, logos, and other indicia (collectively, the "Artist's Trademarks") of the Artist (collectively, "Authorized Tour Merchandise"). This tour and tours by other performers of the Artist's stature, have recurring problems with individuals who sell infringing Tour Merchandise near, at and sometime inside a concert venue. These individuals are

commonly referred to as "Bootleggers," their activities are known as "Bootlegging" and their merchandise is referred to as "Bootleg Merchandise" or "Infringing Merchandise."  This application/motion is filed to enjoin these activities and seize the Infringing Merchandise. Indeed, all prior tours by the Artist or his former group had Bootleggers selling Infringing Merchandise during the prior 4 tours, and I have personally obtained similar seizure orders for each of them.  See Exhibit A hereto.  Moreover, the tour has just begun and so have the infringing actions of the Defendant Bootleggers.  See Jensin Decl. ¶¶ 1, 9.

6. Plaintiff and other merchandisers have obtained temporary restraining orders and seizure orders and thereon a nationwide seizure orders from this and other District Courts to combat the piratical activities of Bootleggers for other performers.  I have personally obtained these orders, except where noted.

**From this District Court for the Artist's Former Group's Tour And from Other Districts for the Artist's and his former Group's Tours:** F.E.A., Inc. v. Does, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Greisa) (for One Directions' tour); Live Nation Merchandise, Inc. v. Does, Case No. 3:17-cv-1275 (M.D. TN 2017) (Judge Trauger) (for Harry Styles' tour); F.E.A. Inc. v. Does, Case No. 15-cv- 1438 CAB (S.D. CA 2015) (Judge Bencivengo) (for One Direction's tour); and F.E.A. Inc. v. Does, Case No. 14-cv-13160 RWZ (S.D. CA 2014 (Judge Zobel) (for One Direction's tour). A true and correct copy of some of the Temporary Restraining Order and Seizure Order and thereafter the Nationwide Preliminary Injunction and Seizure Order for some of these are attached hereto as Exhibit A.

**From this District in New York for Other Performers:** Live Nation Merchandise, Inc. v. Does, Case No. 18-cv-7551 LAP (S.D. NY 2018) (Judge Preska) (for Drake's tour); Live Nation Merchandise, Inc. v. Does, Case No. 16-cv-0336 LAK (S.D. NY 2016) (Judge Kaplan) (for Bruce

4

Springsteen & the E Street Band's tour); F.E.A., Inc. v. Does, Case No 12-CV-1313 PGG (S.D. NY 2012) (Judge Gardephe) (for Van Halen's tour); F.E.A., Inc. v. Does, Case No 12-CV-2920 PGG (S.D. NY 2012) (Judge Gardephe) (for Nickelback's tour); and Bravado International Group Merchandising Services, Inc. v. Does, Case No. 11-cv- 6262 JFK (S.D. NY 2011) (Judge Keenan) (Metallica Festival - cite order only sought); and obtained by other counsel: Phish, Inc. v. Does, Case No. 7:11-cv- 3379 KMK (S.D. NY 2011) (Judge Karas) (for Phish's tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 1:08-cv- 05543 JGK (S.D. NY 2009) (Judge Koeltl) (for Beyonce's tour); and Megadeth Services, Inc. v. Does, Case No. 1:04-cv- 02288 DAB (S.D. NY 2004) (Judge Batts) (for Megadeth's tour).  A true and correct copy of some of the Temporary Restraining Orders and Seizure Orders and thereafter Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit B.

**From Other Districts in New York:** Manhead, LLC v. Does, Case No. 18-CV-3999 (E.D. NY 2018) (Judge Bianco) (for Panic! At the Disco's tour); Live Nation Merchandise, Inc. v. Does, Case No. 1:18-cv-580 LEK (N.D. NY 2018) (Judge Kahn) (for Def Leppard's tour); Live Nation Merchandise, Inc. v. Does, Case No. 18-cv-3468 (E.D. NY 2018) (Judge Feuerstein) (for Lynyrd Skynyrd's tour); Live Nation Merchandise, Inc. v. Does, Case No. 2:17-cv-1987 (E.D. NY 2017) (Judge Feuerstein) (for Def Leppard's tour);  Signatures Network, Inc. v. Does, Case No. CV-08-1181 (E.D. NY 2008) (Judge Platt) (for Mary J. Blige's tour); and Signatures Network, Inc. v. Does, Case No. CV 03-3725 (E.D. NY 2003) (Judge Spatt) (for Kiss' tour). A true and correct copy of some of the Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit C.

**From Other District Courts for Other Performers:** (Sampling of more current and other orders): Merch Traffic, LLC v. Does, Case No. 21-cv-11339 RWZ (D. MA 2021) (Judge Zobel)

5

(for the Eagles' tour); Live Nation Merchandise, Inc. v. Does, Case No. 2:20-CV-1357 ES (D.N.J. 2020) (Judge Ester Salas) (for Post Malone's tour); Live Nation Merchandise, Inc. v. Does, Case No. 19-cv-3762 SJC (N.D. IL 2019) (Judge Coleman) (for Dead & Company's tour); Live Nation Merchandise, Inc. v. Does, Case No. 19-cv-1580 RM (D. CO 2019) (Judge Moore) (for New Kids On The Block's tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 19-cv-3960RC (N.D. IL 2019) (Judge Castillo) (for the Rolling Stones' tour); Live Nation Merchandise, Inc. v. Does, Case No. 18-CV-1868 (S.D. TX 2018) (Judge Gilmore) (for the Eagles' tour); TSURT, LLC v. Does, Case No. 2:18-cv-1119 JLR (W.D.WA 2018) (Judge Robart) (for Pearl Jam's tour); Manhead, LLC v. Does, Case No. 18-CV-2103 (S.D. TX 2018) (Judge Hittner) (for Weezer's tour); Live Nation Merchandise, Inc. v. Does, Case No. 4:18-cv-660 RLW (E.D. MO 2018) (Judge White) (for U2's tour); TSURT, LLC v. Does, Case No. 18 CV 1119 (W.D. WA 2018) (Judge Robart) (for Pearl Jam's tour); Live Nation Merchandise, Inc. v. Does, Case No. 17-CV-1502 (S.D. TX 2017) (Judge Harmon) (for U2's tour); Live Nation Merchandise, Inc. v. Does, Case No. 16-cv-4085 JLL (D. NJ 2016) (Judge Linares) (for Coldplay's tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 17-cv-00005 (S.D.TX 2017) (Judge Harmon) (for the Red Hot Chili Peppers' tour); Live Nation Merchandise, Inc. v. Does, Case No. 16-cv-4085 JLL (D. NJ 2016) (Judge Linares) (for Coldplay's tour); TSURT, LLC v. Does, Case No. 16 CV 60647 (S.D. FL 2016) (Judge Scola & Ungaro) (for Pearl Jam's tour); TSURT, LLC v. Does, Case No. 16-cv-1816 CAB (S.D. CA 2016) (Judge Bencivengo) (for Blink 182's tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 16-cv-00481 TLN (N.D. CA 2016) (Judge Nunley) (for Justin Bieber's tour); Live Nation Merchandise, Inc. v. Does, Case No. 16-cv-0563 JRB (N.D. IL 2016) (Judge Blakey) (for Black Sabbath's tour); Merchandise v. Does, Case No. 16-cv-1194 GHM (S.D. TX 2016) (Judge Miller) (for Beyoncé's

<gt;tour); CA2016 Marketing. v. Does, Case No. 16-cv-05890 JJT (N.D. IL 2016) (Judge Tharp) (for COPA soccer games nationwide); F.E.A., Inc. v. Does, Case No. 15-cv-4374 CK (D. NJ 2015) (Judge Kugler) (for Foo Fighters' tour); Bravado International Group Merchandising Services, Inc. v. Various John Does, Case No. 15 CV 1621 CPK (N.D. IL 2015) (Judge Kocoras) (for Ariana Grande's tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 15-cv-1097 BAS (S.D. CA 2015) (Judge Bashant) (for the Rolling Stones' tour); F.E.A. Inc. v. Does, Case No. 15-cv-1543 CAB (S.D. CA 2015) (Judge Bencivengo) (for 5 Seconds of Summer's tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. CV 14-5993 DMG (C.D. CA 2014) (Judge Gee) (for Eminem's tour); F.E.A., Inc. v. Does, Case No. 14-CV-1432 (S.D. TX 2014) (Judge Hittner) (for Jimmy Buffett's tour); Epic Rights, Inc. v. Does, Case No. 14-cv-1688 WYD (D. CO 2014) (Judge Daniel) (for Kiss' tour); F.E.A., Inc. v. Does, Case No. 14-CV-1389 (S.D. TX 2014) (Judge Ellison) (for Journey's tour); Live Nation Merchandise, Inc. v. Does, Case No. 14-cv-1687 RM (D. CO 2014) (Judge Moore) (for Def Leppard's tour); F.E.A., Inc. v. Does, Case No. CV 14-156 ABC (C.D. CA 2014) (Judge Collins) (for the Eagles' tour); F.E.A., Inc. v. Does, Case No. CV 14-1115 PA (C.D. CA 2014) (Judge Anderson) (for Miley Cyrus' tour); Bravado International Group Merchandising Services, Inc. v. Various John Does, Case No. 14 CV 4983 (N.D. IL 2014) (Judge Wood) (for Paul McCartney's tour); Bravado International Group Merchandising Services, Inc. v. Various John Does, Case No. 13 CV 2227 (N.D. IL 2013) (Judge Gettleman) (for Green Day's tour); TSURT, LLC v. Various John Does, Case No. 13 CV 4990 (N.D. IL 2013) (Judge Durkin) (for Pearl Jam's tour); Live Nation Merchandise, Inc. v. Does, et al., Case No. 12-cv-1136 RBJ (D. CO 2012) (Judge Jackson) (for Roger Waters' tour); Live Nation Merchandise, Inc. v. Various John Does, Case No. 12 CV 4842 (N.D. IL 2012) (Judge Kendall/Feinerman) (for Aerosmith's tour); Live Nation Merchandise, Inc.

7

v. Does, et al., Case No. 11-cv-1297 CMA (D. CO 2011) (Judge Arguello) (for U2's tour); F.E.A., Inc. v. Does, Case No. 2:11-CIV- 01329 JAM (E.D. CA 2011) (Judge Mendez) (for the Glee tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 11-cv-12704 BAF (E.D. MI 2011) (Judge Friedman) (for Katy Perry's tour); F.E.A., Inc. v. Does, Case No. 11-cv-10136 JLO (E.D. MI 2011) (Judge O'Meara) (for Kid Rock's tour); Arnie Barn, Inc. v. Does, Case No. 11 cv-540-T-RAL (M.D. FL 2011) (Judge Lazarra) (for Kenny Chesney's tour); Live Nation Merchandise, Inc. v. Does, Case No. 8:10-cv-371-T-VMC-AEP (M.D. FL 2010) (Judge Hernandez) (for Black Eyed Peas' tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 09-K-1185 (D. CO 2009) (Judge Kane) (for No Doubt's tour); Signatures Network, Inc. v. Does, Case No. 2:09 CIV 0637 PHX DGC (Judge Campbell) (D. AZ 2009) (for Bruce Springsteen and E Street Band's tour); Cinder Block, Inc. v. Does, Case No. 08-CV-1293 JKG (E.D. PA 2008) (Judge Gardner) (for Kid Rock's tour); F.E.A., Inc. v. Does, Case No. 2:08-12381 MOB (ED MI 2008) (Judge Battani) (for Jimmy Buffett's tour); Signatures Network, Inc. v. Does, F 08-898 LJO SMS (E.D.CA 2008) (Judge O'Neill) (for American Idols' tour); Giant Merchandising v. Does, Civ. 07: 399 OWW (E.D. CA 2007) (Judge Wanger) (for Evanescence's tour); Signatures Network, Inc. v. Does, Case No. 07-CV-04024 (Judge Fullam) (E.D. PA 2007) (for Bruce Springsteen's tour). True and correct copies of some of the temporary restraining orders and seizure orders and thereafter nationwide preliminary injunctions and seizure orders issued are attached hereto as Exhibit D.

7. Although many people were served and thousands of items of Bootleg Merchandise were seized, defendant bootleggers do not appear. Notably, all of the above orders were sought at the beginning of tours by well-known performers (of a caliber of the Artist in this matter). Nearly all were filed against Does only, and in **all** cases defendant Does appeared on the tour and sold

8

their Infringing Merchandise, as demonstrated by the prior orders granted in this District and other Districts, as well as the fat that Defendant Bootleggers have already appeared selling their Infringing Merchandise at prior Madison Square Garden performances. See Jenkins Decl. and Exhibits thereto.

8. Based upon my knowledge of these past actions, including 4 prior HARRY STYLES' or his former Group's tours, I believe that it is far more likely than not that the Defendants will use every effort to transfer, hide or destroy the Bootleg Merchandise if such merchandise is not subject immediately to an ex parte search, seizure and impoundment order. From my familiarity with such trademark and unfair competition actions, my observation is that hiding or destroying evidence and business records is usually the first action taken by a Bootlegger after he/she learns that litigation has been commenced by a trademark or similar property owner.

9. As set forth in more detail in the Declaration, the Artist is prominent and successful. The Artist's audience spans a large portion of the total concert going public, his career is firmly established and he enjoys a large audience following. The Artist's Trademarks are well known and have acquired secondary meaning.

10. Typically, a core group of bootleggers and/or their merchandise will follow a successful concert tour of a performer having the stature of the Artist. The pattern is for the same bootleggers or their merchandise to reappear from one venue to the next. Typically prior to a concert, these defendants appear, offering for sale infringing, inferior merchandise, particularly T-shirts, bearing the names and likenesses of the appearing performer. This illegal merchandise seriously impairs sales of authentic merchandise within the arenas, particularly because most of the infringing merchandise is sold prior to the concert. Thus, each of the unauthorized sales represents a lost sale and lost income to the Plaintiff.

11. The persistence and severity of the bootlegging activities experienced by Plaintiff and other merchandisers attests to the economic importance of tour merchandising rights in connection with performers enjoying the prominence of this Artist.  Absent the relief requested, the loss of merchandising income at even a single venue could be substantial. Equally relevant to this application for ex-parte relief, and as more fully demonstrated in the accompanying brief, the injury to the goodwill of Plaintiff and the Artist, through distribution of inferior merchandise (which would inevitably be associated with them), is clearly irreparable.

12. These cases involved concert tours of other prominent musical performers in which the plaintiff's applications for restraining orders and orders of seizure were granted to prevent bootlegging.  In each instance in which service of process was made upon bootlegging defendants, preliminary injunctions were issued to prohibit continued bootlegging by all identified defendants served with process and all persons acting in concert with them.

13. Like almost all of the actions listed in the Exhibits, this action is commenced against John and Jane Doe defendants because those Defendant Bootleggers cannot be "identified" until the night of the concert (when they are actually served).  As a general rule, individual bootleggers are well aware of the illegal nature of their activities.  They conceal their presence and their intentions until immediately prior to the show.  Even when apprehended, they frequently either refuse to identify themselves or provide fictitious names and addresses.  Further, these Defendants <u>do</u> exist; they appear at the concerts, sell their spurious goods, and then disappear. I have personally witnessed this at numerous concerts; I have identified myself as an attorney, asked for their names, and have been given no response as well as responses that I cannot write without offending the Court. Often they say "yeah, show me your order" because they know about these orders and that what they do is unlawful. No defendant has ever made a formal appearance. However, I have had

a few defendants contact me and although they refuse to give me their information, they ask if the performer will appear at the hearing (which they do not) or if they can send to me designs for the performer to review (but again refuse to provide their personal information or make an appearance). This is because only infringing goods are seized and they have no legitimate rights. Further, because Defendants have no legitimate rights, pay no taxes, no licensing fees and they print their infringing merchandise on seconds that are sold at a nominal cost, the bond is usually set in these matters averages $5,000 for the duration of the tour.

14. Clearly, there is no way of providing formal notice of this action to the defendants. Because Plaintiff holds the <u>exclusive</u> right to use the Artist's Trademarks in connection with Tour Merchandise, there is no possibility that issuance of the order sought could interfere with or impose a detriment to <u>any</u> legitimate interest of any person.

15. As demonstrated above, the limited relief afforded to performers and their licensees by the issuance of a temporary restraining order and order of seizure at a single concert site would not prevent these itinerant peddlers from following the performers' tour and continuing to prey upon and infringe their property rights. Accordingly, a multiplicity of legal proceedings seeking the identical relief against the same defendants would be required. Invariably, the cost inherent in such redundant lawsuits is exorbitant, which plays directly into the hands of the bootleggers, since they know that the expense of bringing separate actions for each concert engagement would be prohibitive.

16. At the order to show cause hearing, Plaintiff will provide the Court with a declaration indicating that service of the order and complaint has been made, identifying bootlegging defendants and others acting in active concert and participation with those defendants. Plaintiff may amend the caption of these proceedings to name all identified defendants served with

process, and Plaintiff will present a preliminary injunction directed against such defendants (and all persons acting in concert with them) pursuant to F.R.C.P. Rule 65.

17. It is clear that without the relief sought herein, the Artist and Plaintiff, the legitimate merchandiser, are helpless to prevent this thriving illegal industry from preying upon unwitting fans who are interested in obtaining concert souvenirs. With increasing frequency, courts have granted such relief as the only reasonable and effective manner of providing meaningful relief to the performers and their authorized merchandisers.

18. All merchandise seized pursuant to this Court's order will be held first by Plaintiff's tour managers as substitute custodians, who will then transmit the merchandise to me or to another authorized agent to hold until completion of the Tour. At that time, the Court can direct the destruction or other disposition of the seized merchandise. This saves the Court from the burden of having to hold a voluminous amount of seized goods.

19. Plaintiff is prepared to proceed with a hearing immediately after the execution of the ex parte order being sought, or at such later time as is convenient to the Defendants and to the Court. Accordingly, the ex parte entry of this order, when balanced against the great hardships to Plaintiff if the evidence is lost or destroyed, is justified. In addition, as to the request for the national order, Plaintiff will waive any objection to venue should any such persons (or anyone else) wish to question the enforceability of the preliminary injunction.

20. I am aware of the decision rendered in Plant v. Does, 19 F. Supp. 2d 1316 (S.D. FL 1998). In part because of the reasons set forth in subsequent decision in SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841 (D. KY 2002) and in part because of my personal knowledge, based on participating in over 100 tour related anti-piracy orders (including those issued from the Southern District of New York and 4 prior tours for the Artist or his former group), I believe the issues

raised by Plant have been addressed in our application. Defendant Bootleggers have appeared and will continue to appear at every stop, and all refuse to identify themselves, in part because they know their activities are illegal. I also note that the court in Plant was unhappy that counsel filed his matter a day before the concert which "creat[ed] an artificial air of emergency" and it should have filed it as a regular motion. Counsel in that matter, who may not have been well versed in this area, did not remind the court that the *Lanham Act contemplates that these matters are to be brought on by an ex parte application (i.e. not a formal motion) basis*. I believe based on my extensive history in these types of matters that we are following what is required by the Trademark Act by bringing this as an ex parte application (and not as a noticed motion) within a few days prior to the concerts here in New York, allowing time for the Court's review and for all seizures to take place (if granted). Moreover, if Plaintiff were to wait for a noticed motion to be heard, including having to obtain "information" about the defendants (which again, they will not provide names or any other proper information), Plaintiff would have to file at the location where the Artist will be performing one month or more from now, thereby being further irreparably harmed and losing a great deal of revenue, while the Defendant Bootleggers would continue to infringe the Artist's/Plaintiff's rights. In Plant, the judge believed that filing at the beginning of a tour or before a concert was premature or that Defendants would not appear, but here Defendant Bootleggers have appeared during every prior major tour for performers of the caliber the Artist and on the prior tours by the Artist or his former group (see Exhibit A).

21.     Without an order issued for the beginning of the tour, there would be no effective remedy and Defendants would be able to selling their Infringing Merchandise with impunity. Indeed, the Defendants' actions in their stealth bootlegging activities is one of the main reasons Section 1116(d) (including its ex parte application procedure) was enacted. The Defendants will

sell Infringing Merchandise unless the requested orders are issued. It is highly doubtful that proper information would be obtained about the Defendants. Again, it cannot be stressed enough that these are real people who will appear, just as they have appeared at prior tours by this Artist and during tours by similarly prominent performers.

22. The actions of the Defendant Bootleggers are the same, as set forth in detail above and in the declaration. Nothing is served by filing in districts across the nation because it is clear – they are in active concert and participation with each other. There is no logical explanation for the Infringing Merchandise to contain the same or similar designs, images, logos, etc. when thousands of designs, images, logos, etc. of the Artist are available on the internet and elsewhere. Therefore, issuing only a cite order fails to provide the necessary and appropriate relief to Plaintiff who is clearly wronged. In addition, I often file similar supporting documents in each action because the arguments and facts are nearly identical, so I am not "re-inventing the wheel" by filing dissimilar supporting documents.

23. Plaintiff has followed the procedures of the Anti-Counterfeiting Act and has notified the United States Attorney for this District by letter of its intention to bring this action, and of the nature of this action. The United States Attorney has not responded to this letter. In addition, Plaintiff has not publicized this action.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct. Dated: October 7, 2021.

*Cara R. Burns*

CARA R. BURNS